STEPHEN T. ZEMAN, JR., et al., Respondents, v ZACK AGENCY, INC., et al., Respondents; AGRICULTURAL INSURANCE COMPANY, Appellant.

Second Department, June 23, 1980

APPEARANCES OF COUNSEL

*Bouck, Holloway & Kiernan (John R. Casey* of counsel), for appellant.

*Martin Rosenblum (Michael M. Platzman* of counsel), for Stephen T. Zeman and another, respondents.

*Appelbaum & Eisenberg* for Middletown Savings Bank, respondent.

## OPINION OF THE COURT

WEINSTEIN, J.

This appeal places before the court important issues pertaining to insurance law. In particular, we are called upon to determine the liability of an insurance carrier to provide coverage after a policy has lapsed and where no premiums have been paid beyond the date of the lapse, in those instances where the carrier has failed to inform the insured as to the lapse of the policy and has not billed the insured for renewal of the policy.

The facts are not in dispute. Plaintiffs, Stephen and Patricia Zeman, took title to a house in Walden, New York, on May 4, 1972. On the same day, they procured, through defendant Zack Agency, Inc. (hereafter Zack), a comprehensive homeowners insurance policy issued by defendant-appellant Agricultural Insurance Company. The policy provided $25,000 coverage for the dwelling, and $12,500 for certain personal property contained therein. The policy was for a term of three years. Annual premiums were billed by, and remitted to, Zack.

In anticipation of the expiration of the policy, and pursuant to a communication from the insurance company, Zack wrote to the Zemans on February 3, 1975, in pertinent part, as follows: "On May 4, 1975 your present Homeowners Policy will expire. At present the amount of Policy coverage is $25,000. Would appreciate your advising this office if the above amount is in order, or if you feel the amount on the dwelling should be increased. Please advise this office within the next ten (10) days, *if any changes are desired"* (emphasis added).

Having received no reply from the Zemans, Zack wrote to them again on March 24, 1975, stating: "On Feb. 3rd we asked if the amount of $25,000 was in order, or if the amount should

be increased to keep in line with the value. Would appreciate your advising this office as soon as possible, in order that we may have the company issue the proper renewal."

These were the only communications between either Zack or the insurance company and the Zemans during or after this period. No notice of cancellation was sent to the Zemans, no further premiums were billed and, indeed, after the policy lapsed on May 4, 1975, the Zemans did not remit any further premium payments. Mr. Zeman testified, at an examination before trial, that it did not strike him as odd that he received no notice of premiums due; he simply "wasn't thinking of it."

On July 5, 1976, 14 months after the policy expired, a fire damaged the Zemans' house and property to the extent of $30,000. The insurance company disclaimed any liability for coverage on the ground that the policy had expired and had not been renewed. Thereupon, the Zemans brought this action against the insurance company, Zack, and the mortgagee of their house, Middletown Savings Bank, for negligence in monitoring the expiration date of the policy and failing to notify the Zemans thereof, and for not renewing the policy automatically pursuant to the alleged custom and usage among the parties.

■ The insurance company moved for summary judgment dismissing the complaint as to it on the ground that the policy had expired and had not been renewed. Special Term denied the motion in an order dated August 2, 1979, on the ground that issues of fact existed, apparently relating to the prior course of dealings among the parties. The instant appeal is taken by the insurance company from that order. After a review of the applicable statutes and case law, we conclude that summary judgment in favor of the insurer was properly denied. Furthermore, pursuant to the court's authority under CPLR 3212 (subd [b]), we direct that summary judgment be entered in favor of the Zemans and against the insurance company.

The relevant statute dealing with nonrenewal of a home-owners insurance policy is section 167-a (subd [4], par [a]) of the Insurance Law, which provides, in pertinent part: "Unless the insurer, at least forty-five, but not more than sixty days in advance of the end of the policy period, mails or delivers to the named insured, at the address shown in the policy, a written notice of its intention not to renew a covered policy, or to condition its renewal upon change of limits or elimina-

tion of any coverages, the named insured shall be entitled to renew the policy upon timely payment of the premium billed to the insured for the renewal. The specific reason or reasons for nonrenewal or conditioned renewal shall be stated in, or shall accompany the notice required by this subdivision."

By applying the statute to the facts in the instant matter, we note two issues for our determination: first, whether the two communications from Zack to the Zemans, quoted above, constituted notice of the insurer's intention not to renew within the purview of subdivision (4) of section 167-a; and if not, second, whether the Zemans' failure to make timely premium payments nevertheless entitled the insurer to disclaim liability.

■ ■ The first issue is the easier to resolve; we hold, as a matter of law, that the communications did not constitute the required notice. We base this holding on the fact that the language contained in the communications is devoid of words sounding in or connoting nonrenewal. They merely requested the Zemans to notify the agency if, and only if, any change in the amount of insurance coverage was desired. It is settled that insurance cancellation or nonrenewal notice requirements are strictly construed against the insurer (*Government Employees Ins. Co. v Mizell,* 36 AD2d 452; *Matter of State Farm Mut. Auto. Ins. Co. v Matthews,* 74 AD2d 875). Furthermore, the specific reason for nonrenewal was not stated in, and did not accompany, the notice, as required by the statute; this is not surprising, since the insurer obviously had no intention that these communications should constitute notice of nonrenewal. Finally, the insurer had no basis in fact, nor any reason within contemplation of the applicable statute, for nonrenewal. This is because subdivision (5) of section 167-a of the Insurance Law requires that any notice of nonrenewal issued during the first three years (or, on occasion, longer) that a policy is in effect must be based upon a ground set forth in paragraph (b) of subdivision (3) of that section, such as nonpayment of premium, conviction of a crime, or fraud, and there is no indication in the record that the Zemans had provided any basis for nonrenewal as set forth in that paragraph.

Given that no notice of nonrenewal, timely or otherwise, was sent to the Zemans, we must focus our attention on that part of section 167-a (subd [4], par [a]) which provides that "the named insured shall be entitled to renew the policy upon

timely payment of the premium billed to the insured for the renewal." In this case, of course, the Zemans remitted no such timely payment of the premium for the period beyond the date of the expiration of the original policy. The statute contains no explicit provision as to rights and liabilities of the insurer and the insured when there is neither notice of nonrenewal nor payment of renewal premiums. The determination of what those rights and liabilities are in such a case is the central question on this appeal.

The pertinent legislative intent may be gleaned by briefly examining the predecessor of section 167-a of the Insurance Law. Subdivision 4 of former section 167-b read: "Unless the insurer at least forty-five, but not more than sixty, days in advance of the end of the policy period mails or delivers to the named insured at the address shown in the policy notice of its intention not to renew the policy or to condition its renewal upon reduction of limits or elimination of coverages, *the named insured shall be entitled to renew the policy upon payment of the premium due on the effective date of the renewal*" (L 1971, ch 1033, § 10; emphasis added).

In 1974, before the lapse of the policy in issue herein, the Legislature repealed section 167-b and, for the above-quoted paragraph, substituted the current section 167-a (subd [4], par [a]), quoted above (L 1974, ch 1072, § 2, as amd by L 1979, ch 690, § 4). We believe that it is not without significance that the Legislature amended the text of the statute to read "upon timely payment of the premium *billed to the insured* for the renewal" (emphasis added), rather than "upon payment of the premium due on the effective date of the renewal." It is clear that whereas the former statute put the onus on the insured to make payment "on the effective date of the renewal", the current statute requires that the insurer bill the insured in order to trigger his liability for payment. We hold that the phrase "billed to the insured" in the current section 167-a (subd [4], par [a]) of the Insurance Law requires that the insurer must actually bill the insured in order to subject the latter to a duty to pay the premium as a condition of renewal. In the absence of a nonrenewal notice and of a bill for a further premium, the liability of the insurer remains in effect, despite the failure of the insured to pay premiums.

Public policy, as developed by the State Legislature, evidently requires that the burden of terminating coverage be placed affirmatively on the insurer, rather than on the in-

sured. An insurance company has superior record-keeping ability, as well as a tangible financial interest in obtaining renewals. Common experience indicates that insured persons do not ordinarily keep careful track as to the expiration dates of their insurance policies. We believe that it is eminently reasonable for the Legislature to require that an insurer actually notify its client that his policy is about to expire, or, in the alternative, bill him for the next premium when it falls due. Consistent with the enunciated public policy, as set forth in the statute, mere silence on the part of the insurance carrier cannot operate to terminate its liabilities to the insured.

Accordingly, as the defendant-appellant insurance company never notified the Zemans as to the nonrenewal of their policy, and never billed them for premiums, we hold the insurer liable to the Zemans under the terms of the policy which expired on May 4, 1975, even though the Zemans have made no payments to the insurer since that date.

We note that our decision today is not inconsistent with *Romeo v Reliance Ins. Co.* (53 AD2d 733), in which the Third Department held that in the absence of either a nonrenewal notice or continued payments of premiums, an insurer was not liable to indemnify an insured for a fire occurring after the term of the policy ended. That case was decided on the basis of former section 167-b of the Insurance Law, which, as we noted above, placed responsibility for monitoring the expiration date of a homeowners insurance policy upon the insured, not the insurer. Indeed, the former state of the law was that since "[t]he terms of the policy were always within the knowledge of the [insured, therefore,] if he failed to remember that the policy expired at a certain time before the fire, it was his own negligence, and not [the insurer's], which prevented [the insured] from renewing his policy" *(Holskin v Hurwitz,* 211 App Div 731, 733; see, also, *Kimball v Clinton County New Patrons Fire Relief Assn.,* 23 AD2d 519). We hold today that by amending the Insurance Law as set forth above, the Legislature has altered this rule. The rule with respect to fire and homeowners policies is thus rendered similar to the rule regarding automobile policies, which have long required notice of nonrenewal to be terminated (see *Capra v Lumbermens Mut. Cas. Co.,* 31 NY2d 760; *Matter of Safeco Ins. Co. [Testagrossa],* 67 AD2d 979; *Manning v Boston Old Colony Ins. Co.,* 48 AD2d 838; *Matter of Empire Mut. Ins. Co. v Sash,* 53 AD2d

614). Indeed, the preamble to the 1974 amendments of the Insurance Law states that a purpose of the amendments was to "make more uniform the rules applying" to insurance policies (L 1974, ch 1072; cf. Insurance Law, § 167-aa, subd 5, par [a]).

At this juncture, however, we feel compelled to make some further comments upon the issues decided herein. In this case, the fire which gave rise to the insurance claim occurred only 14 months after the alleged expiration of the policy. Hence, we do not feel it inequitable to impose liability on the insurance company under the facts herein, particularly since the elapsed time between the expiration of the policy and the occurrence of the fire was well within the period of a policy renewal. But we would be far more concerned about such holding had the fire occurred more than three years after the expiration date of the policy. That would require a finding of successive "automatic" renewals despite many years of non-payment of premiums. We would be confronted with a sort of "perpetual coverage" situation, which would appear to be unreasonable. The statute, as currently drafted, makes no provision for a cessation of automatic renewals after a finite period of time. We cannot, *sua sponte,* redraft the written law, but we can, and do, opine as to the necessity for a salutary legislative remedy. A loophole appears to exist; the Legislature should close it.

We hold that in the absence of an explicit notice of nonrenewal in conformity with the statute, and in the absence of a bill for a renewal premium due upon the expiration date of the policy, an insurance policy remains in effect, and is deemed renewed beyond its expiration date, even in the absence of payments of premiums. The Zemans are entitled to summary judgment against the Agricultural Insurance Company on the issue of liability.

The order should be modified so as to affirm the denial of summary judgment to the insurer and to grant summary judgment to plaintiffs on the issue of liability.

MOLLEN, P. J., HOPKINS and TITONE, JJ., concur.

Order of the Supreme Court, Orange County, dated August 2, 1979, modified, on the law, by adding thereto a provision granting plaintiffs summary judgment against the Agricultural Insurance Company on the issue of liability. As so modified, order affirmed, with $50 costs and disbursements

payable to plaintiffs by appellant, and action remitted to the Supreme Court, Orange County, for an assessment of damages.